## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**SHARROD V. KENDRICK**                                     **MOVANT/DEFENDANT**

**v.**                                            **CIVIL ACTION NO.  5:06CV-0000P3-R**
                                                  **CRIMINAL ACTION NO. 5:03CR-00008-R**

**UNITED STATES OF AMERICA**                                **RESPONDENT/PLAINTIFF**

## MEMORANDUM OPINION

Movant, Sharrod V. Kendrick, filed a *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (DN 1).  Kendrick claims that his sentence resulted from an "unconstitutional application of the mandatory [sentencing] guidelines" and should be vacated pursuant to the recent United States Supreme Court decision of *United States v. Booker*, 543 U.S. 220 (2005).

By Memorandum Opinion and Order entered June 9, 2006, the Court concluded that the motion should be denied as time-barred but provided Kendrick with an opportunity to respond (DN 3).  Kendrick filed a response on July 11, 2006, (DN 4), in which he asks the Court to hold his case in abeyance pending the outcome of *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), *cert. granted,* 126 S. Ct. 2352; 165 L. Ed. 2d 278; 2006 U.S. LEXIS 4351 (U.S. June 5, 2006) ( No. 05-9222), a case in which the United States Supreme Court recently granted a writ of  certiorari.  For the reasons that follow, Kendrick's request for an abeyance will be denied and his § 2255 motion dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Kendrick was indicted and charged with violations of 21 U.S.C. § 841(a)(1) & 841(b)(1)(B), possession with the intent to distribute cocaine, on or about February 5, 2003 (5:03CR-00008, DN 1).  The Court appointed a federal defender to represent Kendrick in connection with the criminal proceedings against him.  On November 12, 2003, Kendrick entered a "voluntary plea of guilty to possessing with intent to distribute five grams or more of a mixture or substance containing crack cocaine" (5:03CR-00008, DN 29).  As part of his plea agreement Kendrick acknowledged that he was:

> [A]ware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed.  Acknowledging all this, defendant knowingly waives the right to appeal any sentence within the guideline range provided for in this plea agreement, and the manner in which that sentence was determined on the grounds set forth in 18 U.S.C. § 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.  Defendant also understands and agrees that by pleading guilty, he waives his right to appeal any and all pretrial motions and rulings, including but not limited to his suppression motion which was previously denied by the Court.  **Defendant also waives his right to challenge his sentence and the manner in which it was determined <u>in *any* collateral attack</u>**, including, but not limited to, a motion brought under 28 U.S.C. § 2255 for ineffective assistance of counsel.

(5:03CR-00008, DN 29) (emphasis added).  On February 11, 2004, Kendrick was sentenced by the Court to 200 months of incarceration (5:03CR-00008, DN 34).

Kendrick did not challenge his conviction or sentence on direct appeal.  Instead, he filed a *pro se* motion to vacate, set aside or correct his sentence pursuant to § 2255 in this Court on January 12, 2006.

## II. ANALYSIS

Section 2255 provides for a one-year limitations period, which shall run from the latest of:

>   (1) the date on which the judgment of conviction becomes final;
>
>   (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
>   (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court <u>and made retroactively applicable to cases on collateral review</u>; or
>
>   (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*See* § 2255 (emphasis added).

As previously stated, Kendrick did not pursue a direct appeal of his sentence. "[A]n unappealed district court judgment of conviction becomes 'final' ten days after the entry of judgment. . . ." *Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004). Thus, the one-year period began running on February 26, 2004. Since Kendrick did not file the instant motion until January of 2006, the motion will be time barred unless Kendrick can satisfy one of the other three sections above.

Kendrick argues that his motion is timely under section 3 because *Booker* is a new right recognized by the Supreme Court that should be applied retroactively to all cases on collateral review. Despite Kendrick's argument for retroactivity, the Sixth Circuit Court of Appeals has specifically concluded that "*Booker's* rule does **not** apply retroactively in collateral

proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (emphasis added).

In response to this Court's show cause order, Kendrick acknowledges the holding in *Humphress*, but requests the Court to hold his motion in abeyance until the Supreme Court issues an opinion in the case of *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), *cert. granted,* 126 S. Ct. 2352; 165 L. Ed. 2d 278; 2006 U.S. LEXIS 4351 (U.S. June 5, 2006) ( No. 05-9222). Kendrick claims that the Supreme Court's decision in *Burton* will finally settle the question of whether *Booker* is retroactive, and therefore, will impact the outcome of his § 2255 motion.

**A.      Summary of *Burton*.**

In order to understand Kendrick's arguments, it is necessary to briefly summarize the procedural and factual history surrounding the *Burton* case. A Washington state court jury convicted Burton of rape in the first degree, robbery in the first degree, and burglary in the first degree in 1994. *Burton*, 142 Fed. Appx. at 298. The trial judge sentenced Burton outside of Washington's guidelines after finding that the standard sentence was too lenient, that Burton's actions amounted to "deliberate cruelty," and that Burton demonstrated "sophistication and planning of the sort that makes the defendant a significantly different offender" pursuant to Wash. Rev. Code § 9.94A.390. Petition for Cert. at 4, *Burton*, 142 Fed. Appx. 297 (hereinafter "Petition for Cert."). Burton pursued a direct appeal of his conviction and sentence.

The United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), before Burton's state conviction and sentence became final. In *Apprendi*, the Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt." *Id.* at 490. Thus, Burton argued to the Washington Supreme Court that his exceptional sentence was imposed in violation of *Apprendi*, an argument ultimately rejected by that court.

After exhausting his state court appeals, Burton filed a habeas petition in federal court arguing that his "sentence in excess of the top range set by statute violated due process when factors used to support it were not submitted to a jury and proven beyond a reasonable doubt." *Id.* at 5. The district court denied Burton's petition, and he appealed to the Ninth Circuit. While Burton's case was on appeal to the Ninth Circuit, the United States Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. 296 (2005). In *Blakely*, the Court explained that under *Apprendi* the "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303-04. Burton argued that both *Apprendi* and *Blakely* were violated in his case and that his sentence should be vacated.

The Ninth Circuit rejected Burton's *Apprendi* argument after finding that Burton's "sentence on any individual count, and the total sentence imposed does not exceed the statutory maximum of life imprisonment." *Burton*, 142 Fed. Appx. at 299. The Ninth Circuit did not address whether the sentence may have nonetheless violated *Blakely* because it did not believe *Blakely* could be applied retroactively to cases on collateral review. *Id.*

Burton sought a writ of certiorari from the United States Supreme Court. Burton's petition presented two questions: "(1) Is the holding in *Blakely* a new rule or is it dictated by *Apprendi*; [and] (2) If *Blakely* is a new rule, does its requirement that facts resulting in an enhanced statutory maximum be proved beyond a reasonable doubt apply retroactively?" Petition for Cert. at I. The Supreme Court granted Burton's petition on June 5, 2006.

### B. Relationship Between *Booker* and *Blakey*.

The viability of Kendrick's § 2255 motion rests on *Booker,* not *Blakely,* and Burton states in his petition that he "is not asking [the Supreme Court] to address whether *Booker* announced a new rule. The only question Mr. Burton asks this Court to address is whether the holding of *Blakely* is a new rule." Petition for Cert. at 12. However, due to the interplay between *Booker* and *Blakely*, it is likely that if the Supreme Court addresses the retroactivity of *Blakely* in *Burton*, its analysis and holding will be directly applicable to *Booker*.

In *Booke*r, decided shortly after *Blakely,* the Supreme Court explicitly held that:

> *Blakely* applies to the [Federal] Sentencing Guidelines. We recognize, as we did in *Jones*, *Apprendi*, and *Blakely*, that in some cases jury factfinding may impair the most expedient and efficient sentencing of defendants. But the interest in fairness and reliability protected by the right to a jury trial--a common-law right that defendants enjoyed for centuries and that is now enshrined in the Sixth Amendment --has always outweighed the interest in concluding trials swiftly. . . Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 534 U.S. at 244.

Thus, if the Supreme Court holds that *Blakely* is retroactive, Kendrick may well be correct that it would logically follow that *Booker* must also be applied retroactively.

### C. An Abeyance Is Not Warranted In Kendrick's Case

What is far from certain, however, is whether the Supreme Court will actually reach this second question in *Burton* or whether its decision as to the first question will be dispositive, leaving for another day the question of retroactivity. Furthermore, even if the Supreme Court holds that *Booker* is retroactive in *Burton*, it does not appear that it would impact the outcome of Kendrick's case.

6

As already indicated, Kendrick entered into a plea agreement in which he "**waive[d] his right to challenge his sentence and the manner in which it was determined in *any* collateral attack**." "Plea agreements, the Supreme Court has long instructed, may waive constitutional or statutory rights then in existence as well as those that courts may recognize in the future." *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005).

"The Court has explained that where developments in the law later expand a right that a defendant has waived in a plea agreement, the change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its binding nature. A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance." *Id.* "'Absent misrepresentation or other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 757 (1970) (holding that a defendant could not claim his plea was involuntary by relying on a Supreme Court decision that declared unconstitutional a provision relevant to his criminal sentence)).

In *Bradley*, the movant argued that his sentence was inconsistent with the Supreme Court's decision in *Booker* and urged the Sixth Circuit to remand his case to the district court for resentencing. The Sixth Circuit rejected this argument after finding that as part of his plea agreement Bradley had waived his right to attack his sentence on appeal, and therefore, had no

7

right to make a *Booker* challenge. The Sixth Circuit explained the basis for its decision:

> In this case, Bradley's plea agreement functioned in much the same way as Brady's plea agreement in *Brady v. United States*. Brady pleaded guilty to a life sentence in order to avoid a death sentence under 18 U.S.C. § 1201(a). On learning that the Supreme Court had invalidated this death-penalty provision in *United States v. Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968), because it "made the risk of death the price of a jury trial," *Brady*, 397 U.S. at 746, Brady claimed that "his plea of guilty was not voluntarily given because § 1201(a) operated to coerce his plea." *Id.* at 744. The Supreme Court rejected Brady's argument. ***Here, too, Bradley asks us to invalidate his sentence because he did not know when he pleaded guilty that the Supreme Court would later declare the Sentencing Guidelines to be advisory in Booker. And here, too, the change in law cannot undo his plea.***
> . . .
>
> Plea bargains always entail risks for the parties--risks relating to what evidence would or would not have been admitted at trial, risks relating to how the jury would have assessed the evidence and <u>risks relating to future developments in the law</u>. The salient point is that a plea agreement allocates risk between the two parties as they see fit. If courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, they threaten to reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) with the knowledge that the agreement will be immune from challenge on appeal. *See Young v. United States*, 124 F.3d 794, 798 (7th Cir. 1997)("If the law allowed the defendant to get off scot free in the event the argument later is shown to be a winner, then the defendant could not get the reduction in the first place. Every plea would become a conditional plea, with the (unstated) condition that the defendant obtains the benefit of favorable legal developments, while the prosecutor is stuck with the original bargain no matter what happens later. That approach destroys the bargain, and the prospect of such an outcome will increase the original sentence.").

*Id.* at 463-65 (emphasis added).

Thus, even if the Supreme Court decides *Burton* in a manner that requires courts to apply *Booker* retroactively, it would not change the fact that Kendrick has waived his right to pursue a collateral attack of his sentence. Accordingly, this Court does not believe that holding Kendrick's case in abeyance pending a decision in *Burton* is judicially prudent. It would only

serve to delay the inevitable, a dismissal of Kendrick's motion.

As such, the Court concludes that it must deny Kendrick's request to hold this case in abeyance and dismiss Kendrick's § 2255 motion because it is barred by the applicable statute of limitations.

### III. CERTIFICATE OF APPEALABILITY

In the event that Kendrick appeals this Court's decision, he is required to obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(b); Fed. R. App. P. 22(b). A district court must issue or deny a certificate of appealability and can do so even though the movant has yet to make a request for such a certificate. *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) ("Whether the district judge determines to issue a COA along with the denial of a writ of habeas corpus or upon the filing of a notice of appeal, the district judge is always required to comply with § 2253(c)(2) & (3) by 'indicat[ing] which specific issue or issues satisfy the showing required,' 28 U.S.C. § 2253(c)(3), *i.e.*, a 'substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2).").

When a district court denies such a motion on procedural grounds without addressing the merits of the motion, a certificate of appealability should issue if the movant shows "that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the court erred in dismissing the motion or that the movant should be allowed to proceed further. *Slack*, 529 U.S.

at 484. In such a case, no appeal is warranted. *Id.* This Court is satisfied that no jurists of reason could find its procedural ruling to be debatable. Thus, no certificate of appealability is warranted in this case.

The Court will enter an order consistent with this memorandum opinion.

Date:

cc: Movant, *pro se*
U.S. Attorney

4413.008